The next case for argument is 25-201, District of North Dakota, Loralyn Maixner et al. v. Harold Eidsness et al. Good morning, Mr. Gostin, we'll hear from you first. You may proceed. Thank you, Your Honor. May it please the Court, my name is Dan Gostin, I'm here representing the defendants in this action and requesting that this Court reverse in total the preliminary injunction order that was issued in favor of the plaintiffs in this case. This was after an evidentiary hearing on the preliminary injunction that was conducted. The facts are fairly straightforward. There is actually two claims that are in existence, a First Amendment retaliation claim and an equal protection claim. The District Court didn't rule on the equal protection claim, but we did brief it to preserve that issue on appeal. This issue surrounds a campground in Stump Lake near Devil's Lake, North Dakota. My client, the Park Board, owns and operates this campground. This surrounds a lease agreement that the plaintiffs lease two campsites. The lease agreements were for one year, for the 2024 camping season, starting April 1, 2024 and terminating March 31 of 2025. There's no dispute that this lease, there's no right to renew this lease, there's no right to continue to lease the two campsites. But there had, in fact, been a long history of renewals, right? There had been. They'd used this campsite for a number of years. But the particular lease, there's nothing in the lease, there's nothing in North Dakota law that allows them to continue to lease and effectively own government property. There were communications that the plaintiffs asserted they made. One was alleging their complaints in a suggestions document, except there's no evidence that even exists. There's no evidence that that was even presented to any of the defendants. There was no writing from the plaintiffs. But we do have the audio from the board meeting. We have an audio from the board meeting. There was one meeting that these plaintiffs attended the entire year of 2024, one meeting. And it was undisputed, Judge Colbus, that they raised what they called minor concerns, not even complaints, minor concerns regarding they thought the pavilion wasn't up to stuff or to their standards, the shelter. They complained or raised concerns about dust, mosquitoes, toilet paper not being in the restrooms, pickleball court having leaves on it. Spending public money, is that fair or not? All of it deals with spending public money. None of it, however, there's not a speckle of evidence that they presented any of those issues to raise a concern that my clients were not adhering to their responsibilities or their duties or to demonstrate that there was some misuse or some wrongdoing by the defendants. That's important because the Connick case, the Seminole case, surprisingly wasn't even cited by the plaintiffs in their brief, sets that out, that when we're dealing with, and I don't think it's undisputed, that when we're in a contractual relationship like they've got here, they have to prove that their speech was a matter of public concern. And the matter of public concern is well-defined. It is matters of political, social, or other concerns to the community. Content, form, and context from the entire record matter. Again, there isn't any evidence that they presented these minor concerns to demonstrate somebody wasn't following their responsibility or there was some wrongdoing going on. There is no evidence of that at all. And to your point, Judge, their starting and ending point for the plaintiffs is, if I utter, gee, it might have something to do with the use of public funds, I'm now cloaked with First Amendment protection. That's, I don't believe that's what the law is. If you take a look at the Connick case, that was an attorney that was being transferred to a different department, put out a questionnaire, and the Supreme Court said when she did that, Myers did not seek to inform the public that the district attorney's office was not discharging its government responsibilities in the investigation of criminal cases. Nor did Myers seek to bring light, to light actual or potential wrongdoing or breach of trust on the part of the prosecuting attorney. This Court, in the Cox case, Cox v. Dardenelle Public School District, said the focus on determining if this was a matter of public concern is the role of the person who was in advancing that particular topic. Are they speaking as a citizen to inform the government that the government wasn't employee or the government wasn't discharging their duties? Or engaged in misfeasance, malfeasance or nonfeasance? That's what this Court has said with respect to matters of public concern. Now, I want to step out a little bit out of the Eighth Circuit and go to that BMI case from the Eleventh Circuit. That case dealt with a similar set of factual circumstances, BMI Salvage v. Mannion. The plaintiff there, like the plaintiff in this case, plaintiff's here, releasing property from a governmental entity. Let me ask you a question on the public concern question. These plaintiffs were not public employees, though, right? Correct. Except that, I'm sorry. So tell me why public concern? Because this Court and the U.S. Supreme Court has extended government employee First Amendment retaliation claims to government contractors as well. The L.L. Nelson case explained that as well. Because of the contractual relationship. We're in a contractual relationship. And so I go to the BMI case. There, the plaintiff, all kinds of complaints that were raised. There was some discussion, wasn't there, by the plaintiffs here at the meeting about concern that the campground and the lake would be useful and better to use for the public and the community as a whole. Isn't that a fair statement about what was said during that meeting? And is that enough? I mean, I listened to it this morning. My memory is not great, but there was something in there about that, about not just we're not happy with it, but that it would be better for the public if, and I can't remember if it was the road or the bathrooms, I think, maybe. And that may be true, right? I mean, the fact that this is a campground that people come and use, but it's specifically for those people that are in that particular location. And the fact that the public, I mean, it's a small case in the sense that we're dealing with a small campground in a small State. Doesn't the Constitution still apply? It does still apply, but the fact that there might be a matter that has public interest, and the SPAR case talks about that, the A Circuit case, the fact that it might have some... Isn't it fair to say that a local campground in a small community might be of public concern, the operation of it, the access to it, the quality of the facilities? It would be no different than an airport authority. In fact, I would think in this case, it's a much larger facility. It would have the same application and what they were talking about. And the evidence shows it was for their personal camping experiences, to benefit their personal camping experiences. The district court, I don't think, addressed irreparable harm and cited or I think you cited in your briefs the cases that say we assume irreparable harm in First Amendment cases. Do you agree with that or do you think this case is different? I think it's different because I don't think they've met the success and the merits in the First Amendment claim. I think you have to... I think we can, whether that's a separate issue on appeal or not. I think the fact that there hasn't been success on the merits in the First Amendment, you have to go through all of the four data face... But I thought you were arguing that the plaintiffs did not show irreparable harm because they pled that their injury could be remedied by $450,000 in damages. They did, and not only did they plead it, but they testified to that at the evidentiary hearing. I thought that was your position.  You keep coming back to there's no success on the merits, but we have cases saying that irreparable harm is a necessary showing in an injunction case. I don't disagree with you. I think the Court could find that there is no irreparable harm based upon the evidence and their own allegation that money compensates them and there is no irreparable harm here. I think that would be enough as well. Even if you lose on likelihood of success, right? You keep coming back to likelihood of success, and we may or may not agree with you on that. I do. But I also recognize that there's case law with respect to the First Amendment that, from this Court, regarding if you can prove success on the merits in the First Amendment claim, there is... Well, that's what Judge Kobus, I think, was getting at. How broad are those cases? Do they apply to any First Amendment claim, or is it limited to a claim where the people are unable to speak or unable to exercise their religion, whereas in this case you just have people saying they are losing a permit? And I think the cases, I don't know the precise, all the facts in those cases, whether in those cases the government is acting in a sovereign capacity or in a contractual capacity, because they are significantly different. When they're acting in a sovereign capacity, you don't have to show that public concern element. Did you stumble across the Hotchkiss case? I did not. I'm sorry. I'm into my time. I'll reserve my time. Thank you. Very well. Mr. Thompson, we'll hear from you. May it please the Court and Counsel? Yes, sir. Good morning. With regard to irreparable harm, this is North Dakota. I've lived there since 1979, moving in there from New Jersey, but summertime is precious. And these people had leases. This was their summer. It may not be a fancy summer for some people, but it was their summer every year, in one couple's instance for 28 years, and the other for 11, actually 12 now. It was September 10, 2025. And by the way — Wait a minute. So what's your point on irreparable harm, that the loss of the lease itself is irreparable? Essentially, it's a quality-of-life issue. Okay. So that's not a First Amendment argument. That's an argument. It's an irreparable harm question with regard to the matter of the injunction. These folks, the defendants, would have booted them out. No question about it. There's a long history here. That was kind of glossed over by counsel, but we have 28 summers and 12 summers. Precious summers for people who live in North Dakota. It's not a fancy lake, not a fancy campground. We have people as to whom there was no evidence of contemporaneous complaints during the course of the 2024 summer. And with regard to the declarations, affidavits that were presented in connection with the temporary restraining order and then kind of parroted later on in testimony. The defendants, in their reply brief on page 24, talk about plaintiffs' misguided claim of forgery never happened. English language, the word forged, which is used at page 11 of our brief, meant created, made in counsel's office. The district court made reference to it in its decision, essentially saying that it was cookie-cutter testimony. To go to the September 10, 2025 Park Board slash County Commission meeting, the entities are kind of merged here. Plaintiff Elaine Maxner appeared before the Nelson County Park Board, actually all the plaintiffs did, stating to the board, among other things, last sentence in the direct quote on page 6 of our brief, our concern is spending money in the wrong place at the wrong time. At the same meeting, plaintiff Ron Maxner stated to the board, it's also on page 6 of our brief, you guys are batting 100 percent and making bad decisions. From management, equipment buying, this restaurant, what are you guys going to realize? If this was your business, you wouldn't be in business very long, spending so much money. So is the heart of the public concern here, is it the spending of money? That's a key part of it. What else shows public concern? There's broader commentary by the plaintiffs at this meeting. And it's not limited to their own campgrounds. Well, if it were just people who lease campsites there and they're complaining about how the place is run and how the place is managed because they're not getting a good quality experience, would that be a matter of public concern? Maybe the Court's analogizing this to employee cases. I'm not analogizing it to anything. I'm just asking whether you think that would be speech on a matter of public concern or not. It's not the record here. These comments were made and they're of evidence about the general benefit of a good facility to the entire community. There's also the matter of the standard of review here. It's an abuse of discretion standard. That's a heavy burden for these, that's a heavy hill for these people to climb on a factual and legal basis. So we're dealing with 28 years and 12 years, every summer staying here. If you look at the context, there are no contemporaneous complaints. It's just revisionism coming out of counsel's office in the form of declarations, and that's why we use the term forged, and the district judge clearly saw it as well. You had to create something after the fact because it didn't exist contemporaneously during the summer. These are good people. These are the troublemakers, as the open mic found them to be. As the plaintiffs were leaving the September 10, 2024 meeting, a recording from a live microphone, and this is at page 8 of our brief, a recording from a live microphone at the board's table that captured board member Aaron Mork saying, these are three problem makers, and that was played in court for the district judge. How many opportunities are there to lease in this campground? What's the size on the record? The spots are limited. How many are there? I don't know the total, but they're limited, and one of the issues was whether the board wanted to expand the facility, and that's in the record too. The plaintiffs felt that essentially, reduced the essentials, that let's take care of what we have. Let's spend money appropriately on properly managing and operating the facility we have before we expand. Yes, these campsites are highly sought after. It may not be evident from reading it from some other place. The people aren't entitled to sort of life tenure, are they, or are they? Well, that's really not the point, I respectfully state it. I think the point is here, this was retaliatory conduct. Okay, so you say if there had been no retaliation, the board would be free to drop people year to year and give other people a chance and so forth? The practice was to have a waiting list. People who had been there were entitled to stay there. Yes, there was a waiting list. Entitled legally or just in practice, that was the... With regard to entitlement or expectation, 28 years of every year being renewed to a one-year term, 12 years of that, and the board members themselves are there as well, most of them. It's not a question of anything other than there's a cause effect here. There's a September 10 meeting, and then we have non-renewal. And in the record, there's many instances of the board members not even really being able to explain why they did this after the fact. But it was done, and the temporal aspect of this is very clear. And that's one of the requirements for these kinds of cases. There has to be a connection temporarily between the events or the retaliatory events or the basis for the retaliation and then the retaliation. Another thing, too, there is a 14th Amendment equal protection claim here. And where people are treated differently on a rational basis, it's a rational basis test. And there's no rational basis for the disparate treatment. Then that is the basis for a 14th Amendment equal protection claim as well. And district court did not address that. This is both, and counsel said it's a First Amendment retaliation case. It's essentially a First Amendment petition clause case and a First Amendment free speech clause case. So it's not just the right of free speech. It is the right of people to petition that particular governing body, which is the entity to which their complaints naturally and proximately should be addressed. And in petitioning that entity, they were retaliated against. The defendants introduced several sworn statements, which had the cookie-cutter appearances I talked about before. Donna Rickford, the manager of the park, even admitted how her statement was forged, not forgered, forged, created, hammered out like in a blacksmith shop in defense counsel's office and how she changed her position, this is at page 11 of our brief, at a recorded park board meeting on October 1 when she advocated keeping the plaintiffs around to signing a sworn declaration later prepared by the law firm stating that she would refuse to come back as Stump Lake Park Manager. And that's a common theme here. It's the revisionist record, attempted record, that was contrived and essentially presented because they had no contemporaneous record dealing with these particular plaintiffs during the summer of 2024. So, as well, during this time, there is no evidence, there were general comments about the plaintiffs being difficult. Should not a public entity like this be held to a standard of performance? Clearly, these folks, and it's not just the September 10 meeting, there's also the document that was presented earlier and they try to disavow and say, gee, I never saw that. You had consequences leveled at these people to terminate their leases because of what they said and what they advocated. And are we going to say that, and clearly, this advice, this well-intended advice, was not well taken by people in authority in this purview? They got pissed off and they retaliated. I want to take my walker and walk over to counsel's table and get a larger binder and read something from the district court out of the transcript. When the courts leave. Thank you. All right. At page, at 306, it's part of the hearing transcript. At the end of the hearing, the court says on page, transcript page 171, and by the way, there was this three strikes stuff. Right in the lease, there was a three strikes provision. You got three strikes, you're out. These folks, not one of them got a strike in all the summer of 2024. That's kind of glossed over by the defendants as well. But they didn't get as strict as the court. They didn't get a strike the whole summer, and they come to complain at a September meeting, and then all of a sudden, the county commission talks about them a few months later, and they're complainers and they're not renewed. That's the record. The court adds, and it's not a good one for your client. He was referring to Mr. Gostad. Thank you, Your Honor. My time has elapsed. All right. Thank you for your argument. If the court has any questions, I'm happy to answer them. Very well. Thank you. Let's just wait a minute so Mr. Thompson can be seated. Thank you. All right. You may proceed with rebuttal. Thank you. I want to correct a couple of things. Determining whether this is a protected speech or not is a question of law. That's de novo review. That's the Cigna Corp. v. Bricker case that we cited 103F4 at page 1334. Also, I think counsel made my point. This is not a matter of public concern. It's about management and operation of a campground. They don't like how money is being spent. It's the wrong place, wrong time. It's their preference as to how they would have spent the money. Not a single word, no evidence, no argument, nothing, to demonstrate that the use or how they were managing it was some sort of breach of the public trust, some sort of wrongdoing, some sort of failure to comply with their duties. Nothing. The issue about the fact that the other tenants might be interested in the same issues, would that make it a matter of public concern, or does it have to be a broader public association? There's case law that talks about if there is, it becomes a heightened public awareness, and if there's groundswell of support, that that's a factor. I don't think it's so. So it could be sufficient that it's a matter of interest to the tenants, however large that group is? It would be great, but there's no evidence that that even existed. There isn't anybody that came forward. There's no evidence in the record that anybody out at that campground, anybody in Nelson, anybody in North Dakota came and raised an issue about how this small park board was managing and operating a campground. So there's no evidence to even suggest that that factor even plays into this decision making. As far as the reference about not being told about their behaviors, the three-strike rule is what was in the court focused on that. There wasn't a strike. The evidence is clear. There wasn't a strike. But the manager described what type of conduct that she determined would warrant a strike, some sort of confrontation, property damage, verbal assault, things like that. Thank God this didn't get to that level. She didn't issue a strike. She also didn't issue a strike because she was concerned about retaliation by these plaintiffs against her. That's in the record as well. The fact that there isn't a strike doesn't mean it didn't happen. And the evidence is clear. They signed declarations. Every party that signed a declaration testified, that's my signature, that, all the statements in there are still true and correct. Under oath, they were subject to cross-examination, not examined at all regarding those matters. The other matter I want to bring up is the balance of harm and the public harm in this situation. Effectively, they've created a perpetual property interest. The district court's going to become the super campground manager because I can't recommend my client to go out and do anything to these plaintiffs at this point. Well, you might have to recommend that they just have a lottery system every year. But even that would be deemed to be some change in conduct. That would be deemed to be some sort of retaliation under the First Amendment because they brought a lawsuit. That in and of itself may be deemed as a change in course of action. I see. I thought your point was they would be afraid ever to remove anyone. So the recourse might be to have a lottery system where they don't have any involvement in deciding who comes and goes. I guess they wouldn't want to do that, though, because they want to stay there as the board and they want to have their friends there with them. They want to be there perpetually. They want to own and operate. Who does? The plaintiffs want that. All these people. Well, all these people, it sounds like. I don't know about the, there's nothing in the record to suggest anybody else. Okay. I don't think we could do anything and not have a claim of a First Amendment violation under these set of circumstances. Thank you, Your Honor. We'd ask you to reverse. All right. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course.